```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
MADELENA PERRELLI,

                Plaintiff,
                                              MEMORANDUM AND ORDER
        v.
                                              18-cv-04370(KAM)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
----------------------------------X
```
**KIYO A. MATSUMOTO, United States District Judge**:

      Pursuant to 42 U.S.C. § 405(g), Medelena Perrelli ("plaintiff") appeals the final decision of the Commissioner of Social Security ("defendant"), which found that plaintiff was not eligible for disability insurance benefits under Title II of the Social Security Act ("the Act") on the basis that plaintiff is not disabled within the meaning of the Act.  Plaintiff alleges that she is disabled under the Act and is thus entitled to receive the aforementioned benefits.

      Presently before the court are plaintiff's motion for judgment on the pleadings (ECF No. 13, "P's Mem."; *see* ECF No. 16, "P's Reply") and defendant's cross-motion for judgment on the pleadings (ECF No. 15, "D's Mem.").  For the reasons stated below, plaintiff's motion is DENIED, and defendant's motion is GRANTED.

**Background**

I. **Factual Background**

On October 21, 2013, plaintiff underwent a CT-scan, which showed multiple right lung masses that were highly suspicious for neoplasm for metastatic disease and marked emphysema. (ECF No. 17, Administrative Transcript ("Tr."), 260.) On October 24, 2013, plaintiff underwent another CT-scan from which nodules were noted on the right lung. (*Id.* at 246-47.) On November 8, 2013, at the Memorial Hospital for Cancer, Inderpal Sarkaria, M.D. treated plaintiff and suggested that she undergo lung surgery. (*Id.* at 209-11, 215-17, 300-02.)

On December 20, 2013, plaintiff underwent lung surgery. (*Id.* at 222.) Dr. Sarkaria completed a right robotically assisted procedure, right thorascopy with lobectomy total and segmental, bronchoscopy diagnostic-flexible, and PR thorascopy with right wedge reaction. (*Id.* at 229.) Plaintiff was discharged on January 2, 2014, and was encouraged to ambulate. (*Id.* at 303.) On January 10, 2014, plaintiff visited Dr. Sarkaria for a physical examination, which showed no abnormalities. (*Id.* at 305.) Dr. Sarkaria assessed that plaintiff was recovering well and was getting back to her activities of daily living. (*Id.*) Dr. Sakaria also asserted that plaintiff would likely require adjuvant chemotherapy. (*Id.*)

On January 27, 2014, plaintiff was treated by Marjorie Zauderer, M.D., a thoracic oncologist, for her follow up post lobectomy. (*Id.* at 204-08.) Dr. Zauderer suggested that, because the nodules were cancerous, plaintiff should undergo chemotherapy. (*Id.* at 207.) On February 10, 2014, Dr. Zauderer observed that plaintiff was recovering well from surgery and was starting chemotherapy that day. (*Id.* at 313.) On April 21, 2014, the last day of plaintiff's chemotherapy, she was treated by Dr. Zauderer, who observed that she "continue[d] to recover well." (*Id.* at 310-12.) A neurological examination of plaintiff revealed a speech impediment, a word-finding delay, and a robotic voice. (*Id.* at 198, 311.)

After plaintiff's last cycle of chemotherapy, she reported to Nurse Practitioner Leslie Tyson at the Memorial Hospital for Cancer that she was continuing to gain weight but was otherwise improving. (*Id.* at 189.) Plaintiff's energy was better, and she had no postoperative pain. (*Id.*) Plaintiff's physical examination showed no abnormalities and she was assessed as "stable." (*Id.*)

On June 23, 2014, plaintiff also saw Prasad Adusumilli, M.D., for surgery follow-up. (*Id.* at 306.) Plaintiff denied shortness of breath, chest pain, or palpitations, and reported no new onset symptomatology. (*Id.*) On January 12, 2015, plaintiff was treated by Dr. Adusumilli

3

again, and complained of increased pain in her right arm. (*Id.* at 186.) Plaintiff was fully ambulatory without any restrictions, and her physical examination was "unremarkable." (*Id.* at 186.) Dr. Adusumilli explained to plaintiff that she was noted to have chondroid calcifications in the right proximal humerus and advised her to see an orthopedic surgeon to address it. (*Id.*) On the same day, a chest CT-scan was performed on plaintiff that revealed no evidence of recurrent or metastatic disease. (*Id.* at 239.)

## II. Application for Disability Insurance Benefits and Administrative Hearing

On January 13, 2015, plaintiff filed an application for Title II disability insurance benefits. (ECF No. 16-1, Joint Statement of Facts.) The date of the alleged onset of plaintiff's disability was October 1, 2013, and plaintiff, who was 49 years old at the time, claimed that she was disabled as a result of lung cancer stage III in remission, chronic obstructive pulmonary disease ("COPD"), partial lung removal, inability to lift heavy objects, shortness of breath, chronic fatigue, leg ulcer, two lesions on right shoulder causing issues moving her arm, and a stutter. (Tr. 140-41, 155.) On April 23, 2015, plaintiff's claim was denied. (*Id.* at 67-73, 78-83.) On

April 29, 2015, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (*Id.* at 23, 90-91.)[1]

On March 27, 2017, plaintiff appeared and testified before ALJ Thomas Gabreel.  (*Id.* at 32-51.)  During the hearing, plaintiff's counsel asked the ALJ if the consultative examinations that had been scheduled for plaintiff were still necessary.  (*Id.* at 35, 50.)  At the end of the hearing, the ALJ responded that the exams "wouldn't necessarily" be required, but that he "would advise [them] when [he] look[ed] more carefully through the case . . . if [he] felt it was necessary."  (*Id.* at 50.)  On April 4, 2017, the Social Security Administration sent plaintiff and her counsel a letter advising plaintiff that two additional consultative examinations had been scheduled, on the afternoon of April 13, 2017.  (*Id.* at 60-66.)  The letter was sent to plaintiff's address in Brooklyn, New York, and to her attorney's address in Knoxville, Tennessee.  (*Id.* at 60, 65.)  No evidence of plaintiff attending the scheduled consultative examinations appears in the record.

In a decision dated May 16, 2017, the ALJ determined that plaintiff was not disabled within the meaning of the Act and was thereby not entitled to benefits.  (*Id.* at 20-31.)  On

---

[1] On February 24, 2017, plaintiff underwent another CT-scan, which showed post-surgical changes of the right lung, no evidence of residual or recurrent lung cancer, and mild centrilobular emphysema. (Tr. 253-55, 317.)

5

June 5, 2017, plaintiff appealed the ALJ's decision to the Appeals Council.  (*Id.* at 4-9.)  On May 31, 2018, the Appeals Council denied review of the decision, thereby rendering the ALJ decision the final decision in the case.  (*Id.* at 1-6.)  On August 2, 2018, plaintiff filed the instant action in federal court.  (*See* ECF No. 1, Complaint.)

## Legal Standard

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Social Security Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow."  42 U.S.C. §§ 405(g), 1383(c)(3).  A district court, reviewing the final determination of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998).

A district court may set aside the Commissioner's decision only if the factual findings are not supported by substantial evidence or if the decision is based on legal error.  *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008).  "Substantial evidence is 'more than a mere scintilla,'" and must be relevant evidence that a reasonable mind would accept as

6

adequate to support a conclusion. *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (citing *Richardson v. Perales*, 420 U.S. 389, 401 (1971)). If there is substantial evidence in the record to support the Commissioner's factual findings, those findings must be upheld. 42 U.S.C § 405(g). Inquiry into legal error "requires the court to ask whether 'the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act.'" *Moran v Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). The reviewing court does not have the authority to conduct a *de novo* review and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result. *Cage v. Comm'r*, 692 F.3d 118, 122 (2d Cir. 2012).

To receive disability benefits, a claimant must be "disabled" within the meaning of the Act. *See* 42 U.S.C. §§ 423(a), (d). A claimant meets this requirement when she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A); *Shaw v. Chater,* 221 F.3d 126, 131-32 (2d Cir. 2000). The impairment must be of "such severity" that the claimant is unable to do her previous work or

7

engage in any other kind of substantial gainful work. 42 U.S.C. § 423(d)(2)(A).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether the claimant's conditions meet the Act's definition of disability. *See* 20 C.F.R. § 404.1520. This process is as follows:

> "[I]f the Commissioner determines (1) that the claimant is not working, (2) that [s]he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in [her] prior type of work, the Commissioner must find [her] disabled if (5) there is not another type of work the claimant can do."

*Burgess*, 537 F.3d at 120 (quoting *Green-Younger v. Barnhard*, 335 F.3d 99, 106 (2d Cir. 2003) (alterations in original)); *see also* 20 C.F.R. § 404.152(a)(4). At any of the previously mentioned steps, if the answer is "no," then the analysis stops and the ALJ must find claimant not disabled under the Act.

During this five-step process, the Commissioner must consider whether "the combined effect of any such impairment . . . would be of sufficient severity to establish eligibility for Social Security benefits." 20 C.F.R. § 4040.1523. Further, if the Commissioner does not find a combination of impairments, the combined impact of the impairments, including those that are

8

not severe (as defined by the regulations), will be considered in the determination process. 20 C.F.R. § 416.945(a)(2).

In steps one through four of the sequential five-step framework, the claimant bears the "general burden of proving . . . disability." *Burgess*, 537 F.3d at 128. At step five, the burden shifts from the claimant to the Commissioner, requiring that the Commissioner show that, in light of the claimant's residual functional capacity, age, education, and work experience, the claimant is "able to engage in gainful employment within the national economy." *Sobolewski v. Apfel*, 985 F. Supp 300, 310 (E.D.N.Y. 1997).

"The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational background, age, and work experience.'" *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (alterations in original)).

## **Discussion**

Plaintiff argues that the ALJ failed to fulfill his duty to develop the record, because there is no medical opinion in evidence to support his residual functional capacity ("RFC") determination. (*See* P's Mem. at 2-5.) Defendant argues that

9

the ALJ had no further duty to develop the record after plaintiff did not attend scheduled consultative examinations, and he properly considered all relevant evidence to conclude that plaintiff could perform work available in the national economy. (*See* D's Mem. at 4-8.)

I.  **The ALJ's Disability Determination**

Using the five-step sequential process to determine whether a claimant is disabled, the ALJ determined at step one that plaintiff had not engaged in substantial gainful activity since October 1, 2013, the alleged onset date. (Tr. 25.)

At step two, the ALJ found that plaintiff suffered from severe impairments of lung cancer in remission after partial lobectomy with residual and mild emphysema, and obesity. (*Id.*) The ALJ considered plaintiff's conditions of a speech impediment, a leg ulcer, and two right shoulder lesions, finding them to be non-severe. (*Id.*)

At step three, the ALJ determined that from October 1, 2013 through the date of the hearing, plaintiff did not have an impairment (or combination of impairments) that meets or medically equals the severity of one of the listed impairments in 20 C.F.R Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526), although the ALJ considered Listing 13.14. (Tr. 26.)

10

At step four, the ALJ found that plaintiff had the residual functional capacity to perform light exertional work. (*Id.* at 28.)  In arriving at this RFC, the ALJ stated that plaintiff "is able to sit, stand and walk for 6 hours each," and "she can frequently lift and carry 10 pounds," but did not cite to supporting documents.  (*Id.*)

At step five, the ALJ found that plaintiff was capable of performing work that was available in the national economy—specifically, her past work as the owner of a pet store.  (*Id.*) Thus, the ALJ concluded that plaintiff was not disabled within the meaning of the Act, as defined in 20 C.F.R. § 416.920(g).  (*Id.*)

## II.  Development of the Record

Before determining whether defendant's final decision is supported by substantial evidence under 42 U.S.C. § 405(g), "the court must first be satisfied that the ALJ provided plaintiff with 'a full hearing under the Secretary's regulations' and also fully and completely developed the administrative record."  *Scott v. Astrue*, 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010) (quoting *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)); *see also Rodriguez v. Barnhart*, 2003 WL 22709204, at *3 (E.D.N.Y. Nov 7, 2003).  The spirit of the administrative review process is beneficent, not adversarial.  *See* 20 C.F.R. § 405.1(c)(1)

11

("In making a determination or decision on your claim, we conduct the administrative review process in a non-adversarial manner."); *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) ("The model is investigatory, or inquisitorial, rather than adversarial"); *Seavey v. Barnhart*, 276 F.3d 1, 4 (1st Cir. 2001) (because a hearing for disability benefits is a non-adversarial process, "the Commissioner is not a litigant [in the matter] and has not representative at the agency level").

Thus, an "ALJ's role . . . is analogous to that of a trial judge, for whom it is clearly improper to interfere with the questioning of a witness, particularly when it is done in a partisan manner." *Kitt v. Comm'r of Soc. Sec.*, 2015 WL 4199281, at *2 (E.D.N.Y. July 13, 2015) (quoting *Fulwood v. Heckler*, 594 F. Supp. 540, 547 (D.C. Cir. 1984)). An ALJ has no interest in denying benefits and is to serve as a neutral fact-finder, not an "advocate with a predetermined mind destined to reach a predetermined result." *Id.*; *see also Richardson v. Perales*, 402 U.S. 389, 410 (1971) ("The social security hearing examiner, furthermore, does not act as counsel. He acts as an examiner charged with developing the facts."). The ALJ's role confers a duty to "affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Pratts*, 94 F.3d at 37 (internal quotation marks omitted). From the duty to develop the record follows the duty to listen to

12

subjective complaints of disabling pain and, above all, the duty to be fair. *See Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) ("The ALJ should not be biased or predisposed to granting or denying benefits, nor should the ALJ develop the record in a manner that favors one side and disfavors the other.").

The court finds that the ALJ provided plaintiff with a fair hearing. It is well-established that the burden of proving disability is on the claimant. 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). The ALJ notified Plaintiff and her counsel of two consultative examinations, but plaintiff failed to attend. If a claimant fails to attend a scheduled consultative examination without "a good reason," a finding of not disabled may be rendered. 20 C.F.R. § 404.1518(a). Examples of "good reasons" include:

> (1) Illness on the fate of the scheduled examination or test;
> (2) Not receiving timely notice of the scheduled examination or test, or receiving no notice at all;
> (3) Being furnished incorrect or incomplete information, or being given incorrect information about the physician involved or the time or place the examination or test, or;
> (4) Having had death or serious illness occur in [the claimant's] immediate family.

20 C.F.R. § 404.1518(b).

13

Courts in this Circuit have held that where a claimant fails to appear at a scheduled consultative examination without explanation, the ALJ has no further duty to develop the record. *See Cornell v. Astrue*, 764 F. Supp. 2d 381, 405 (N.D.N.Y. 2010); *Stephens v. Astrue*, 2009 WL 1813258, at *8 (N.D.N.Y. June 25, 2009). In *Stephens*, the court rejected the plaintiff's claim that the ALJ failed to develop the record because there were no consultative examinations, where one was scheduled and the plaintiff did not argue there was good cause for failing to attend. 2009 WL 1813258, at *8; *see also Matta v. Colvin*, 2016 WL 524652 at *10 (S.D.N.Y. Feb. 8, 2016) ("[W]here claimants have refused to acknowledge, attend, or cooperate at scheduled consultative examinations or have failed to argue that they had good reasons for not attending such examinations, courts have rejected claims that the ALJ failed to develop the record.").

Here, plaintiff alleges that the ALJ failed to adequately inform her of the necessary consultative examinations. (P's Mem. at 3-4.) During the hearing, plaintiff's counsel asked the ALJ if consultative exams were still necessary. (Tr. 50.) The ALJ responded that a consultative exam may not be, but clearly stated that he "would advise [them] when [he] look[ed] more carefully through the case . . . if [he] felt it was necessary." (*Id.*) On April 4, 2017, the agency sent plaintiff and her counsel a letter advising her

14

that two additional consultative exams had been scheduled in her case. (*See id.* at 60-66.) The letter stated, "[t]he above request is made for the Administrative Law Judge" and "[i]t will be necessary for you to be examined by the Specialist named below . . . ." (*Id.* at 60.) Further, in all capital letters, at the bottom of the first page, the letter stated:

> YOU ARE EXPECTED TO MAKE AND KEEP THIS APPOINTMENT. IF YOU FAIL TO KEEP THIS APPOINTMENT, AND YOU DO NOT ADVISE US OF THE REASON YOU ARE UNABLE TO APPEAR FOR THE EXAMINATION, THE DECISION WILL BE MADE BASED ON THE INFORMATION IN YOUR CASEL AND IT MAY BE FOUND THAT YOU ARE NOT (OR NO LONGER) DISABLED OR BLIND.

(*Id.*) This letter was sent to plaintiff's address in Brooklyn, New York, and to her attorney's address in Tennessee. (*Id.* at 60, 65.) Plaintiff does not argue that she had "good reasons" for missing the scheduled exams. Rather, plaintiff contends that it "is highly possible that Plaintiff [n]ever received the letters for an appointment scheduled for a mere nine days after the date the letter was mailed." (P's Reply at 2.) Such a possibility is not the sort of good cause that is necessary to justify plaintiff's failure to attend. Accordingly, plaintiff's claim that the ALJ failed to develop the record is without merit.

15

### III. Substantial Evidence Supported the ALJ's RFC Decision

Plaintiff further argues that despite her failure to attend the consultative examinations, the ALJ still needed to obtain a medical opinion regarding plaintiff's ability to function. (P's Mem. at 4-5.) The burden, however, was on plaintiff to proffer medial evidence showing the existence of her disability. 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.").

The Second Circuit has held that an ALJ's RFC finding does not need to perfectly correspond to any single medical source opinion. *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). Instead, the ALJ is able to weigh all of the evidence from the record as a whole to make an RFC finding. (*Id.*) The absence of a corresponding medical opinion does not make it so the ALJ is relying on "lay opinion" to interpret medical data when making an RFC finding. *Johnson v. Colvin*, 669 F. App'x 44, 46 (2d Cir. 2016).

Here, the ALJ determined that, based on the record as a whole, plaintiff could perform a reduced range of light work. (Tr. 26.) The ALJ found that "[a]lthough the claimant suffers from obesity and fatigue, which may preclude her from performing

16

more strenuous work, . . . there is nothing in the record that would prevent her from performing light exertional work." (*Id.*)

This finding was based on the record, including plaintiff's testimony that she reported earnings during 2014 and 2015 to the IRS. (Tr. 38, 149-50.) Plaintiff alleges that the earnings were a result of her son performing the work, though she reported the earnings as her own. (*Id.*) The ALJ found that the 2014 and 2015 reported earnings were consistent with earnings she reported in previous years. (*Id.* at 27.) Further, the ALJ concluded that there was no evidence to support plaintiff's assertion that her son actually performed the work. (*Id.*) Plaintiff signed her name on the tax returns she submitted to the IRS, making those earnings presumptively correct. (*Id.*)

The ALJ reasonably found plaintiff's reported earnings in 2014 and 2015 as indicative that she was able to perform some light work activity. (*Id.*) Moreover, after the lobectomy and chemotherapy, plaintiff's physical examination showed that "she was fully ambulatory without any restrictions." (*Id.* at 27, 186.) Accordingly, the ALJ's RFC decision was supported by substantial evidence when viewed in the context of the entire record.

## Conclusion

For the foregoing reasons, the Commissioner's finding that plaintiff was not disabled as defined by the Social Security Act was supported by substantial evidence in the record. Accordingly, plaintiff's Motion for Judgment on the Pleadings is DENIED and defendant's Cross-Motion for Judgment on the Pleadings is GRANTED. The Clerk of Court is respectfully directed to enter judgment in favor of defendant and close this case.

**SO ORDERED.**

DATED:   Brooklyn, New York
         June 1, 2020

                              _____/s/_____
                              HON. KIYO A. MATSUMOTO
                              United States District Judge